UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

Nos. 98-27(L)
(CA-97-2520-8-AW)

———————————

Eugene Sherman Colvin-El,

                                    Petitioner - Appellee,

         versus

Eugene Nuth, etc., et al,

                                    Respondents - Appellants.

———————————

O R D E R

———————————

     The court amends its opinion filed June 17, 1999, as follows:

     On the cover sheet, section 4, line 3 -- "J. Frederick Motz,
Chief District Judge" is deleted.

                                    For the Court - By Direction

                              /s/ Patricia S. Connor
                                    Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EUGENE SHERMAN COLVIN-EL,
Petitioner-Appellee,

v.

EUGENE NUTH, Warden; J. JOSEPH
CURRAN, JR.,

Respondents-Appellants.

JOHN MARVIN BOOTH; WESLEY
EUGENE BAKER; KENNETH LLOYD
COLLINS; STEVEN H. OKEN,
Amici Curiae.

No. 98-27

EUGENE SHERMAN COLVIN-EL,
Petitioner-Appellant,

v.

EUGENE NUTH, Warden; J. JOSEPH
CURRAN, JR.,

Respondents-Appellees.

JOHN MARVIN BOOTH; WESLEY
EUGENE BAKER; KENNETH LLOYD
COLLINS; STEVEN H. OKEN,
Amici Curiae.

No. 98-29

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-97-2520-8-AW)

Argued: April 8, 1999

Decided: June 17, 1999

Before WILKINSON, Chief Judge, and NIEMEYER
and MICHAEL, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Wilkinson and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Annabelle Louise Lisic, Assistant Attorney General, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellant. Jose Felipe Anderson, Baltimore, Maryland; John H. Morris, Jr., Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellant. Nevett Steele, Jr., Michael J. Gentile, Towson, Maryland, for Amicus Curiae Booth; Gary W. Christopher, Assistant Federal Public Defender, Baltimore, Maryland; William B. Purpura, Baltimore, Maryland, for Amicus Curiae Baker; Peter E. Keith, GALLAGHER, EVELIUS & JONES, Baltimore, Maryland; Charles G. Bernstein, Baltimore, Maryland; Neil Ian Jacobs, Rockville, Maryland, for Amicus Curiae Collins; Fred Warren Bennett, CATHOLIC UNIVERSITY LAW SCHOOL, Washington, D.C., for Amicus Curiae Oken.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

Eugene Colvin-El was convicted by the State of Maryland for the murder of Lena Buchman and sentenced to death. Acting on Colvin-

2

El's petition for writ of habeas corpus filed under 28 U.S.C. § 2254, the district court granted the petition on a claim of ineffective counsel and ordered Maryland to provide Colvin-El with another sentencing hearing. The court denied all other claims that Colvin-El alleged in his petition. Because we conclude that the state court's decision denying Colvin-El post-conviction relief on this basis was a reasonable application of Strickland v. Washington, 466 U.S. 668 (1984), we reverse the district court's order insofar as it granted the writ and affirm all other aspects.

I

At 2:30 p.m. on September 9, 1980, Lena Buchman, 82, who had arrived from Florida during the morning to visit her daughter, Marjorie Surell, at her home in Pikesville, Maryland, was found brutally murdered. Buchman had been stabbed approximately 28 times with a serrated knife taken from the kitchen of the Surell home. After having arrived at Surell's home at 11:00 a.m., Buchman had lunch with Surell's daughter, Susan Rubin, who then left at 1:00 p.m. Buchman was found in a pool of blood in the front hallway of Surell's home one and one-half hours later by a neighbor, who, when noticing that Surell's dog was loose, entered the front door. The screen door was unlocked and the inner wooden door was open.

Police investigating that day found the glass in the rear basement door broken, and the door unlocked. The glass from the door had been removed from the window and had been stacked on the stairwell. Police recovered numerous clear fingerprints from these pieces of broken glass. Police also found an ironing board, which had been kept leaning against the door, lying flat on the floor. The door would only open approximately four inches because a metal storage cabinet blocked it from opening further. Before leaving that day, Susan Rubin had been downstairs and seen that the door at that time was closed and that the ironing board was leaning against it. Marjorie Surell likewise noticed this condition earlier the same morning.

Police found the serrated knife at the foot of the basement stairs. The master bedroom of Surell's home had been ransacked, and jewelry and two watches were reported stolen. The jewelry and the watches were readily identifiable as they had been appraised a couple

of months earlier. Other jewelry was recovered from the driveway. Police recovered Buchman's purse from the kitchen and removed a fingerprint from a piece of paper on a notepad in the purse.

A neighbor interrogated by police on the day of the murder told police that she observed two black males walk past her house at about 2:00 p.m., that another black male had ridden by on a bicycle, and that a white female was in the neighborhood "appear[ing] to be collecting or doing a survey." Another neighbor told police that a bicycle found by police in Surell's driveway was his and that he had seen it last in his yard about 2:15 p.m. on the day of the murder.

Four months after the murder, Colvin-El, who is black, was arrested for an unrelated breaking and entering. At the time of his arrest, he was carrying an identification card issued by the Maryland Motor Vehicle Administration which gave his name as Eugene Sherman Colvin and his address at 615 Brice Street. It also included a picture of Colvin-El. Fingerprints taken from Colvin-El following this arrest matched those taken from the broken glass at Surell's house. Subsequently uncovered transaction sheets from pawn shops in the vicinity showed that on September 17, 1980, eight days after Mrs. Buchman's murder, Colvin-El pawned two watches. The transaction recorded the identification card number of Colvin-El, and both watches were readily identifiable as those taken from Surell's home -- one by serial number.

Colvin-El was arrested for the Buchman murder and the state trial court appointed attorney Robert Payne to represent him. Payne and Colvin-El, however, had a poor relationship, and Colvin-El maintains in his brief that prior to trial he and Payne jointly moved to end their relationship, a request that he claims the state court denied. This, however, does not appear in the record.

At trial, police detectives maintained that Colvin-El entered Surell's home through the basement door where Colvin-El's prints had been found. Payne, however, did not challenge this theory by cross-examining the detectives on the fact that the door could open only approximately four inches. Additionally, Payne did not bring out evidence that might have suggested that other persons seen in the neighborhood on the day of the murder might have been perpetrators.

4

Payne also did not suggest the possibility of some other perpetrator based on the unidentified fingerprint found on the piece of paper in Mrs. Buchman's purse, which was shown not to have been that of Colvin-El. Finally, Payne failed to offer evidence that jewelry had been found by police outside of the house in the driveway.

Colvin-El chose not to testify and Payne put on no proof during the guilt phase of the trial. Colvin-El was convicted of first degree murder, robbery with a deadly weapon, and daytime housebreaking. In answers to special interrogatories, the jury found that Colvin-El's first degree murder conviction was based on (1) premeditation, (2) a killing committed in connection with a robbery, and (3) a killing committed in connection with a daytime housebreaking. Any one of these findings was sufficient to support the verdict of murder in the first degree. After a separate sentencing hearing, the jury sentenced Colvin-El to death.

Colvin-El's conviction and sentence were upheld by the Maryland Court of Appeals, Colvin v. State, 472 A.2d 953 (Md. 1984) ("Colvin I"), and the United States Supreme Court denied Colvin-El's petition for writ of certiorari, 469 U.S. 873 (1984).

On post-conviction review, the Circuit Court for Anne Arundel County denied relief in connection with the guilt phase of trial based on various grounds, including the alleged ineffectiveness of counsel for not presenting evidence relating to other possible perpetrators. Payne testified that he believed the evidence of other suspects might have been important, but that he acceded to Colvin-El's wishes. Payne stated, "Mr. Colvin, earlier in the case, told me that he didn't want other people brought into it as he wasn't there. He didn't want anyone to think that he was there with someone else." The circuit court, however, vacated Colvin-El's death sentence and ordered a new capital sentencing hearing because three convictions obtained while Colvin-El was between the ages of 16 and 18 should not have been presented to the jury during the sentencing proceeding. Both the State of Maryland and Colvin-El appealed and the Maryland Court of Appeals affirmed. State v. Colvin, 548 A.2d 506 (Md. 1988) ("Colvin II"). It agreed with the circuit court that the three earlier convictions should not have been introduced and ruled that resentencing was required also because the jury form used in the sentencing was uncon-

5

stitutional. The court declined to decide Colvin-El's claim that Payne had been ineffective as Colvin-El's counsel because the court found that any alleged ineffectiveness did not prejudice Colvin-El at the guilt portion of his trial. None of the information that Payne failed to present to the jury could have created a reasonable doubt that Colvin-El was not at least a burglar and an accomplice in the murder, leaving him liable for first degree felony murder. The court noted that the matters that Colvin-El's attorney allegedly should have presented related only to whether Colvin-El should receive the death penalty. Since this issue was to be decided by a new jury at another sentencing hearing, the court concluded that Colvin-El could show no prejudice.

During the resentencing proceeding, the jury was required to assume that Colvin-El had been properly convicted of first degree murder, but it was required to determine four issues: (1) whether Colvin-El was a principal in the first degree in the murder, a legal pre-requisite to receipt of the death penalty; (2) whether the murder was committed during a robbery or attempted robbery; (3) whether there were any mitigating circumstances; and (4) whether the aggravating circumstances outweighed the mitigating circumstances. Colvin-El v. State, 630 A.2d 725, 728 (Md. 1993) ("Colvin III"). The jury received evidence on all four of these issues, including (1) victim impact evidence, (2) Colvin-El's prior convictions, (3) evidence put on by Colvin-El of sightings of persons considered by the beholders to be "suspicious," and (4) evidence of other persons suspected of break-ins. Colvin-El also told the jury that "I did not go into the Surell's house, rob, hurt, or kill Ms. Buchman." The court instructed the jury on how to apply the evidence to the questions presented to it.

The resentencing jury found that Colvin-El was a principal in the first degree -- that is, that he had actually done the stabbing -- and that the murder was committed during a robbery. The jury found no statutory mitigating factors, but found one nonstatutory mitigating factor, that Colvin-El did not premeditate the murder. Additionally, one or more, but less than all 12 of the jurors found that Colvin-El was not likely to be a threat to others in prison society and that Colvin-El had some qualities that could be socially constructive within prison society. The jury unanimously found, however, that the aggravating circumstances outweighed the mitigating circumstances and sentenced Colvin-El to death. On appeal from this second sen-

6

tencing hearing, the Maryland Court of Appeals affirmed. Colvin III, 630 A.2d 725.

In August 1997, Colvin-El filed a petition for writ of habeas corpus in the district court, alleging a broad range of constitutional deficiencies in his state trials, including principally the ineffectiveness of counsel and the insufficiency of the evidence. Although the district court rejected all but one of Colvin-El's claims, it agreed with Colvin-El that he was entitled to yet another sentencing hearing and that the hearing had to be bifurcated. The issue of whether Colvin-El was a principal in the first degree would have to be litigated first, and only then, if the answer to that question was yes, would the issue of whether Colvin-El should be given the death penalty be decided. The district court's conclusion was based on its initial conclusion that Colvin-El's counsel was ineffective in the guilt phase of trial in failing to bring to the attention of the jury evidence suggesting the presence of additional perpetrators. Because counsel did not introduce that evidence during the guilt phase, it had to be presented to the second jury during sentencing phase to determine whether Colvin-El was a principal in the first degree. The district court reasoned that because the second jury was required both to decide whether Colvin-El was a principal in the first degree and to consider the aggravating and mitigating factors relating to whether he should be executed, the decision on principalship was tainted by the jury's learning of Colvin-El's prior robbery convictions. The district court concluded that this potential prejudice could only be eliminated by resentencing Colvin-El in a bifurcated sentencing proceeding.

The district court found no merit to any of Colvin-El's other contentions and it rejected Maryland's contention that Colvin-El's petition for the writ of habeas corpus was time-barred by 28 U.S.C. § 2263. Its rejection of this defense was based on the fact that Maryland had not "opted in" to Chapter 154 of Title 28 and thus was not entitled to the benefit of the limitations period imposed by § 2263.

The State of Maryland filed this appeal, and Colvin-El filed a cross-appeal.

II

In reviewing the district court's order on a petition filed under 28 U.S.C. § 2254, we must determine whether the district court erred in

7

concluding that the State of Maryland's decision to execute Colvin-El was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[T]he writ [of habeas corpus] should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." Green v. French, 143 F.3d 865, 870 (4th Cir. 1998).

The State of Maryland contends that the district court erred in concluding that the Maryland courts' method for resolving Colvin-El's ineffectiveness of counsel claim was an unreasonable application of clearly established federal law. Under clearly established federal law, a defendant claiming ineffective assistance of counsel must establish two prongs. First, he must show that his "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Because a defendant claiming ineffective assistance of counsel must establish both prongs, Maryland argues that Colvin-El's petition should have been dismissed because he failed as a matter of law to establish the prejudice prong.

Rather than making the determination of whether Colvin-El's counsel was in fact ineffective within the meaning of Strickland, the Maryland Court of Appeals observed that any prejudice from the alleged ineffectiveness would be eliminated by the resentencing of Colvin-El which the Court of Appeals had found was necessary for unrelated reasons. The district court disagreed with the Maryland Court of Appeals. Accordingly, we must now determine whether the Maryland Court of Appeals' conclusion that Colvin-El suffered no prejudice for any alleged ineffective assistance of counsel because of the resentencing was an "unreasonable application" of federal law. See 28 U.S.C. § 2254(d).

Colvin-El's claim of ineffectiveness was based principally on the failure of his counsel to pursue evidence during the guilt phase of his

8

trial that might have pointed to other participants. In particular, he contended that his counsel was ineffective in failing to present evidence (1) that there were other "suspicious" individuals in the neighborhood on the day Mrs. Buchman was murdered, (2) that a fingerprint of someone other than Colvin-El was found on a page in a notepad in Mrs. Buchman's purse, (3) that some jewelry had been dropped in the Surells' driveway, and (4) that the basement door opened only approximately four inches. This evidence-- particularly the additional fingerprint and evidence of other suspicious persons in the neighborhood -- could arguably suggest that others in addition to Colvin-El might have taken part in the burglary of the Surell home.

The Maryland Court of Appeals concluded, however, that the evidence would not have permitted a reasonable jury to find that Colvin-El was not a participant in the burglary during which the murder occurred. And this participation alone would have been sufficient under Maryland law for a conviction on the charge of murder in the first degree. See Stevens v. State, 192 A.2d 73, 78 (Md. 1963). The omitted evidence did not suggest that Colvin-El was not at the scene. On the contrary, the evidence showed that Colvin-El's fingerprints were left on the broken window in the back door to the Surell home and that the back window had been broken between 1:00 p.m. and 2:30 p.m. on the date of the murder. Moreover, during the same period, Surell's master bedroom was ransacked and two watches stolen, which were pawned several days later by Colvin-El. Accordingly, the Maryland Court of Appeals concluded that any ineffectiveness of counsel could only have prejudiced the sentencing phase of Colvin-El's trial, and would be cured by resentencing, where the jury would have to determine whether Colvin-El was a principal in a first degree murder. See Maryland Rule 4-343(g); Colvin II, 548 A.2d at 514 & n.5.

Rejecting this argument as an unreasonable application of Strickland, the district court concluded that the resentencing of Colvin-El did not eliminate the prejudice which resulted from the assumed ineffective assistance of Colvin-El's counsel during the guilt phase. It reasoned that because the resentencing jury was made privy to Colvin-El's prior burglary convictions when it made the determination of whether he was a principal in the first degree, the criminal history evidence put Colvin-El in a less favorable light than he would

9

have been had the principalship issue been determined by the jury during the guilt phase of the original trial where the evidence of prior convictions would not yet have been in evidence. This reasoning fails for two reasons.

First, the evidence of principalship would not necessarily have come in during the guilt phase even on a complete retrial. It was not a necessary element of the first degree murder charge and was necessary only to determine whether the death penalty could be imposed. Maryland procedure expressly recognizes this. See Md. Rule 4-343(g).

Second, during the resentencing of Colvin-El, the jury was carefully instructed about which evidence to consider in determining whether he was guilty of being a principal in the first degree. Moreover, it was admonished not to consider the aggravating or mitigating evidence in that determination. In particular, the jury was instructed:

> The laws of this State require that you begin your deliberations by reaching a determination as to this issue of first degree principalship. This decision must be based only on the evidence presented to you, which concerns how the murder actually was committed, how it took place. You may not consider among yourselves any of the aggravating or mitigating evidence presented in this case before you have determined whether the State of Maryland has proven beyond a reasonable doubt that Mr. Colvin-el was a principal in the first degree of the murder of Mrs. Lena Buc[h]man.

> For example, you may not discuss or consider Mr. Colvin-el's prior convictions until and unless you ha[ve] conclusively determined that he was a principal in the first degree. Similarly, you cannot consider Mr. Colvin-el's family background, his institutional history, the presentence investigation report, which was entered into evidence and which is one of the exhibits that will be with you, or any of those matters referred to in Section III of the Findings and Sentencing Determination Sheet called "mitigating circumstances."

10

You may not consider any of these things that I have just talked about until and unless you decide the issue with regard to principalship, and that issue being whether the State has met its burden of proving to your satisfaction beyond a reasonable doubt that Mr. Colvin-el was a principal in the first degree to the murder of Mrs. Lena Buc[h]man.

There is no evidence in the record to suggest that the jury did not follow these instructions, and therefore, we must presume that the jury followed them. Thus, when the jury considered the issue of principalship in the first degree, it would not have considered the prior convictions relevant, and Colvin-El suffered no prejudice. See Strickland, 466 U.S. at 694 (When "making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law").

Since Colvin-El is unable to show any prejudice resulting from his ineffectiveness allegations, he certainly cannot carry the burden of showing that the Maryland Court of Appeals' decision in this regard was "an unreasonable application" of Strickland. Accordingly, we conclude that the district court erred in granting Colvin-El's petition for writ of habeas corpus on this ground.

III

On his cross appeal, Colvin-El challenged the district court's rulings on several of its other points. His principal claim is that there was insufficient evidence upon which to base a jury verdict that he was the principal in the first degree. See Jackson v. Virginia, 443 U.S. 307 (1979). In support of this contention, Colvin-El argues that (1) the fingerprint evidence found on a page in the notepad in Mrs. Buchman's purse indicates that there was an additional (or different) perpetrator, and (2) a police detective's testimony, that the basement door could only open approximately four inches, indicates that the basement door was not the point of entry. The Maryland courts, however, rejected these arguments through an entirely reasonable analysis. As to the fingerprints on the notepad, the Maryland Court of Appeals stated:

That fingerprint was on a single piece of paper that was recovered by the police from a small notepad that was in

11

Mrs. Buchman's large, canvas handbag which was found on the counter in the Surells' kitchen. The police found the handbag open. On the top of the inside of the handbag was an open wallet. Attached as part of the outside of the wallet was an open change purse. The only money in the wallet consisted of a few coins in the change purse.

The piece of paper, measuring approximately three and one-half inches by six inches, has writing on one side, divisible into three categories. The top section is a shopping list reading "Tegrin, Mylanta, Kaopectate [and] tape." The second section is a note saying in part, "give to Alberta," with the balance not decipherable but possibly reading,"promise cat paid." Mrs. Surell identified the handwriting on these two portions of the note as that of her mother, Mrs. Buchman, who had a friend in Florida named Alberta. The third section of the note was a name, Edith Kellerman. That handwriting was not the handwriting of Mrs. Buchman, and Mrs. Surell did not know who Edith Kellerman was.

Colvin-El's argument to the jury was that the unidentified fingerprint indicates the presence of some other person in the kitchen where the knife was obtained with which Mrs. Buchman was murdered. That argument failed with the jury, and it also fails to render the State's evidence legally insufficient as to first degree principalship. A reasonable juror could conclude that the unidentified fingerprint was left by the person who wrote the name Edith Kellerman. In any event, the jury was not compelled to find that, either before or after killing Mrs. Buchman, the person who opened the handbag, wallet, and change purse also went through her notebook and was sufficiently fascinated with the medicines that Mrs. Buchman took that that person impressed a clear fingerprint on the slip of paper while reading it.

Colvin III, 630 A.2d at 730-31. In short, the Court of Appeals concluded that the single fingerprint on a piece of paper in a notepad in Mrs. Buchman's handbag does not demonstrate that Colvin-El did not stab Mrs. Buchman. Nor does it render the other evidence in the case insufficient to support the jury's finding.

12

As to the limited opening capacity of the basement door -- approximately four inches -- the Maryland Court of Appeals found that the evidence did not undermine the jury's conclusion that Colvin-El stabbed Mrs. Buchman. The court said,

> There is no dispute that entry was gained and that Mrs. Buchman was murdered in the course of the robbery inside of the house. Rejecting the conclusion drawn by the police [that the basement door was] the point of entry does nothing to place one or more persons, other than Colvin-el, in the home.

Id. at 731. During the short period between 1:00 p.m. and 2:30 p.m. on September 9, 1980, the window in the back basement door of the Surell home was broken and the door opened. Also during this period, the house was entered; a knife was taken from the Surell kitchen and used to stab Mrs. Buchman 28 times; the master bedroom was ransacked and jewelry and watches were stolen. Two particularly indicting items of evidence aim only at Colvin-El as the perpetrator. First, Colvin-El's fingerprints were clearly found on the glass at the basement door placing him at the scene during the relevant period. And second, Colvin-El pawned the two watches that were stolen from inside the Surell home during the relevant period. In the absence of other evidence, this evidence indicates that the person whose fingerprint was on the broken glass in the home is also the person who stole the two watches and who murdered Mrs. Buchman. Colvin-El has never claimed that any other person was with him when he broke the glass and obtained the watches. While the burden of proof was always entirely upon the State to prove beyond a reasonable doubt that Colvin-El personally stabbed Mrs. Buchman to death, the absence of evidence pointing to any other person leaves unchallenged the evidence pointing solely to Colvin-El. Indeed, instead of offering any explanation or argument as to why he was at Surell's home or how he obtained the stolen watches, Colvin-El advanced the theory that he was never at Surell's home, a theory that is entirely inconsistent with the evidence.

In addition, it should be noted that the same detective who estimated that the basement door could open only four inches also said that his estimate was an approximation and that he believed that the

13

opening was large enough for a person, although not all persons, to pass through. Colvin-El, at 5'7" and 135 pounds, was a relatively small person. If Colvin-El did not enter through the small opening, he found another point of entry to obtain the watches. Either way, the evidence points to him and only him as the burglar and the killer.

IV

Finally, Colvin-El contends that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963) at his original trial by failing to disclose information, including the existence of the fingerprint on the notepad and the fact that a comparison had shown that the fingerprint was not Colvin-El's. In Colvin-El's third state post-conviction proceeding, the Maryland circuit court found, as a matter of fact, that Colvin-El had been given this material by the prosecution. The district court, citing the presumption of correctness due to state courts under 28 U.S.C. § 2254(d) agreed. Colvin-El has presented us with no evidence that he did not receive the disputed materials. Accordingly, we affirm the district court's holding on this issue.

In summary, we conclude that Colvin-El has not established any basis for federal habeas relief under Strickland v. Washington, Jackson v. Virginia, or Brady v. Maryland, and accordingly his petition for a writ of habeas corpus must be denied. In that regard we affirm the district court's order in part and reverse in part, and remand with instructions that the district court enter an order denying the petition.

In light of our ruling, we need not reach the State's argument that Colvin-El's petition was untimely under 28 U.S.C. § 2263.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS

14